Next case in our call is agenda number 22, case number 107993, People v. James Washington. You may proceed, Counsel. Thank you. Good morning, Your Honors. May it please the Court. My name is Sari London, here on behalf of the people of the State of Illinois, the appellants in this case. The jury in this case found the defendant guilty of armed robbery, aggravated kidnapping, and aggravated vehicular hijacking. This conviction was based on the evidence which was prevented at trial, which established that while the victim was sitting in his delivery truck, the defendant approached and pointed a gun at his head, preventing the victim from escaping. The defendant forced the victim back into the truck, and the defendant in his mail accomplished commandeered the truck, forcing the victim to sit in the middle portion of the truck sitting on top of a safe. The defendant, still pointing the gun at the victim's head, told the victim not to move. Ultimately, the victim was forced into the cargo area of the truck at gunpoint, and the safe was removed from the truck. The defendants fled on foot after the truck was pursued by the police, and in fact they fled as the truck was still moving. The victim was ultimately rescued by the officer who opened the cargo area of the truck. The defendant was apprehended almost immediately after a foot chase, brought back to the scene, and identified by the victim as the person who pointed a gun to his head. The defendant's accomplice was not apprehended, and the safe that was taken from the truck was not recovered, and the gun that was used by the defendant was not recovered either. The defendant appealed his convictions, and in part held that the people did not approve beyond a reasonable doubt that the gun used was a dangerous weapon. The appellate court reversed the defendant's conviction and remanded the case to the circuit court to enter judgment on the lesser included offenses. In reversing the defendant's convictions, your honors, the appellate court failed to apply, and in fact ignored, the standard of review which must be applied in all sufficiency of evidence cases, and misapplied and mischaracterized this court's decision in People v. Vernon Ross when it held that Ross was dispositive in this case in holding that the evidence was insufficient here, that the gun was a dangerous weapon, even though the victim's testimony was positive, credible, unequivocal, and unrebutted, and it was absolutely a reasonable inference for the jury to have made that the gun used here was a dangerous weapon. We ask that the appellate court's decision be reversed. What did the victim say exactly, counsel? The victim testified very credibly, your honor, many, many times that the defendant held a gun in her hand. The victim was absolutely certain, and there's no reason for us to distrust the victim's testimony here, as there was no testimony that the victim was uncertain and incapable of knowing what a real gun looks like. How does this portion of Ross affect the argument based on that testimony? It says, contrary to the holding of the appellate court here in Ingrier, Illinois cases did not create a mandatory presumption that a gun is a dangerous weapon. Instead, our cases conclude that the trier of fact may make an inference of dangerousness based upon the evidence. The state may prove that a gun is a dangerous weapon by presenting evidence that the gun was loaded and operable. There's no evidence of that here, right? That is correct. Or by presenting evidence that it was used or capable of being used as a club or bludgeon. Here the state did neither. Here, talking about the Ross case, that was part of the quote from Ross. Did the state present any evidence that the gun was loaded, you said no, or operable, or that it was capable of being used as a club or a bludgeon? Is that to be assumed? Is that where your argument lies, that it's assumed it could be used as a club or a bludgeon? Not assumed, Your Honor. Only that Ross does not change the law that the jury is entitled to make a reasonable inference based on the evidence that the gun was a dangerous weapon. In Ross, the reason why more evidence needed to be provided was because the inference in Ross was rebutted. It was precluded by the evidence. The evidence in Ross was proven to be a small unloaded pellet gun, incapable of being capable of being a dangerous weapon, unless possibly evidence had been established that it was an extremely heavy pellet gun. However, in this case, that is not the case. The inference remained intact. The law permits and allows the jury to make an inference that the weapon used was a, when a victim says that a gun is used in a case, as it is in here, and the evidence is unrebutted, positive, unimpeached, and credible, and the victim says a gun was used, the jury is then, it is their job to make this inference to determine whether the gun is a dangerous weapon. So, but we go further. That's why I picked the quote that I did. I mean, and I'm not saying you're right or wrong on this, but in Ross, we say there is not a mandatory presumption that a gun is a dangerous weapon. The only testimony in this particular case is of the victim, as I understand it, saying that a gun was held to his head. And then Ross goes on to talk about how the state may prove that either a gun is a dangerous weapon or a bludgeon, none of which was done here. And you're saying the difference is that there was a factual question in Ross, which isn't in our case? Correct, Your Honor. We are not arguing that, to bring back the law, that there is a presumption that is allowed to be made. All we are arguing, Your Honor, is that Ross did not change the law that precluded the trier fact to infer that a gun was dangerous or to change the standard of review. Now, in Ross, the quote that you are talking about, the court said that, used the word may, not must. So not holding that in every case, the state must either prove that a gun is loaded or prove that it could be used or capable of being used as a bludgeon. The people would maintain, Your Honors, that here, since the inference, which is allowed to be made by the jury and is their job to determine. Just for the record, it's a reasonable inference we're talking about. Absolutely, Your Honor. And we maintain that it was a reasonable inference in this case. The inference remained intact. The inference in Ross, and in cases like Thorn or Skelton. Excuse me. I'm sorry, Your Honor. Can you explain to us how the object of this case was a firearm? How do we know that from the evidence of this case? That is a firearm, Your Honor, from the credible testimony of the victim. Which said he testified that he saw a gun. That a gun was held to his head. There's no evidence that he ever actually touched the gun or that the gun touched the head, is there? No, Your Honor. Just that the defendant pointed the gun to his head. It's all based upon the defendant's observation of whatever was in the defendant's hand. The victim's observation. Correct, Your Honor. How do we prove, how have we proved, or you proved, that this is a dangerous weapon? We have proved it's a dangerous weapon, Your Honor, because law does not require the people, in order to establish the elements of the offenses, for a gun to be recovered. The law in many Illinois cases has held sufficient that when the credible testimony of a witness, the victim in this case, is unrobotted, the jury can then make a reasonable inference that the gun was real and therefore a dangerous weapon. Certainly, an unloaded real gun is capable of being used as a bludgeon, and this Court has stated in People v. Skelton that it's a dangerous weapon. I know it's a difficult case, but how do we know from the record that it was a dangerous weapon? We know from the record... What is there in the testimony of this other than people saw something that looked like a gun? It is strictly by the reasonable inferences that the jury is allowed to make in this case. There is nothing in this case to prevent the jury from making the reasonable inference that if they believe the victim's testimony, which was absolutely credible and positive, and there's no reason to distrust the victim's testimony, there was no indication that the victim was incapable of knowing what a real gun is. It was the question for the jury to determine, was this gun a real gun? If the jury determines that it's a real gun, which they did in this case, and it was a reasonable inference to make here, then it is a dangerous weapon. The people maintained that the appellate court's opinion in reversing defendant's conviction, they did not even talk about any inferences by the jury. They just simply assumed that because the weapon was not recovered, which the law does not require the weapon to be recovered to prove it's a dangerous weapon, the appellate court simply assumed that it was not a dangerous weapon. It had to either be a toy gun, a replica, a BB, or a pellet gun, as in Ross. That is not the law. If you take the... There's no way that they could tell by looking at the gun that it was a real gun, was there? Just looking at the gun itself? We would maintain, Your Honor, that there is. The law does not require an expert to testify with regards to whether a gun is a gun or not. It, again, was for the jury to weigh the evidence and make that inference for themselves. The appellate court here took that job away from the jury and, in essence, retried the defendant in this case and simply assumed and applied negative inferences, in essence, Your Honor, resurrecting the abandoned doctrines which this Court has abandoned long ago, requiring collaboration of the victim's testimony, which has been rejected and was applied in sex cases, or the reasonable hypothesis of innocent test, which was used in circumstantial evidence cases. This Court has long abandoned those doctrines, but, in essence, the appellate court, by overextending this Court's decision in Ross and by failing to apply the proper standard of review, which would be viewing the evidence in the light most favorable to the prosecution and all the reasonable inferences in the light most favorable to the prosecution, could a rational trier of fact have found the elements of the crime? Absolutely, in this case, a rational trier of fact did. In order for the appellate court to have reversed this case, they would have had to have found that the jury's determination was so unreasonable, so improbable, so unsatisfactory, that it raised a reasonable doubt of defendant's guilt. It did not happen here. You added a little bit to what you were supposed to be proving there, weren't you? I'm sorry, Your Honor. I mean, you added on to the requirement, what you're saying is the requirement of the State. You're adding on some things that are also not in the record of this case, aren't they? I'm sorry. I added on. That's all right. You may proceed. Okay. I certainly would never intend to add something not in the record, and I apologize if somehow I said something that did. Your Honors, if the appropriate standard of review is applied in this case, it is clear that the appellate court erred in reversing defendant's conviction. Many courts in Illinois have upheld and held sufficient that the people have sustained their burden of proof of proving that a weapon used, a gun, is a dangerous weapon. If a victim testifies credibly that a gun was used and is testified to an element of the offense, it was then for the jury, a fact for the jury to determine, was that gun a dangerous weapon? This inference remained intact here, unlike the inference in Ross or in Thorn, where the evidence precluded that inference. It was rebutted. It was the evidence established that those weapons were incapable of being a dangerous weapon. But here, that inference remained intact, and the jury here could have inferred that it was a real gun and therefore a dangerous weapon. The people maintain that if the appellate court's decision is allowed to remain intact, that could have long-range effects of case law in this area. Illinois courts have never required that a gun be recovered or described for the people to prove the elements of the offenses here. When the evidence is viewed in the light most favorable to the prosecution, as the appellate court had to view the evidence in this case, it's clear that the people have met their burden. And the appellate court's extension of Ross has misapplied that decision because Ross does not purport to change the standard of review or require that a gun be recovered for the people to establish their burden of proof. If the state were to prevail on the Ross issue, would we have to address the cross-appeal? We would maintain that that issue would, the defendant would not prevail, but certainly then that issue would be reviewable. The indictments in this case absolutely specifically apprised the defendant of the charges that this was raised for the first time in appeal, the prejudice standard applies in this case, and the defendant absolutely cannot establish prejudice. The blanket policy of the judge in this case, the motion limiting? That has been decided, of course, by this Court in Pieper v. Everett. And back to Justice Freeman's question, the cross-appeal issues were not resolved by the appellate court? No, it was not. So if we reverse on the basis you're asking us to reverse, that could always be remanded to the appellate court to look at those issues, right? That would be correct, Your Honor. We would say that it would not necessarily be necessary because based on the record before you, you could determine that absolutely prejudice cannot be established here and the defendant is not entitled to relief. Your Honors, we ask this Court to reverse the decision of the appellate court who failed to apply the appropriate standard of review and has overextended this Court's decision in Ross, which really is distinguishable and does not apply in this case. Based on our arguments made here today and those made in our brief, the people respectfully request that this Honorable Court reverse the appellate court's decision and affirm defendant's convictions and sentence for aggravated kidnapping, aggravated vehicular hijacking and armed robbery. Thank you very much. May it please the Court, my name is Laura Weiler and I represent James Washington. This morning I'd like... Ms. Weiler, Ms. Weiler. I'm sorry? I have a question already, isn't that something? Absolutely. You are not saying, as I understand it, that convictions cannot be appelled for firearm offenses whenever a defendant successfully disposes of the gun, right? That is not your position. No, that's absolutely not my position. Okay. And you would agree then that the State is correct in their interpretation of the gun and it's not required. So that's not your position. So my question is in this case we have the testimony of the victim, right? We don't have the gun, right? Yes. We have the testimony of the victim. What would the victim have had to say to be in compliance with, I think your position is that Ross would say we need more here. What would that victim have had to say? Well, I agree that Ross is dispositive on this case and it would have simply been one additional bit of information which would be to describe the physical characteristics of the object that he saw. Ross and the other case law indicate that something relating to the weight or the metallic nature of the object would have been sufficient in this case. Was there any testimony by the victim with respect to how they felt or were they afraid at the time the gun was held to the head of the victim or anything like that? No. The victim did not specifically testify that he was afraid. But again, that would not be sufficient anyway because both Skelton and Ross indicate that the subjective belief of a victim with regard to the dangerous nature of a weapon is insufficient and the State doesn't challenge that legal holding in this appeal. Isn't it becoming though, requiring that testimony, isn't it becoming perilously close to this Court doing exactly what neither you nor the State are asking us to do and that is basically saying that if there's a gun that's disposed of, it's going to be very difficult to uphold firearm offenses? I don't think so. Let me just ask you why I'm going there. Even if he said it was cold, it was metal, it was my head, it had a polished handle, I mean in that case it still could be a toy gun, it could be a lot of other things than a firearm capable of shooting a gun. So are we getting close, you know, get rid of the gun and no firearm offense? No. And there's an important distinction here because this is not a firearm case. This is a case where the State argued the dangerous weapon was dangerous because it was capable of being used as a bludgeon and that's an important distinction here. As you noted, the State has not argued and the record doesn't show that the object that Washington used was a gun that was loaded and therefore dangerous per se or that it was even used or wielded as a bludgeon. So the question in this case is whether there was any objective evidence introduced that it was capable of being used as a bludgeon. But a gun is something that most people can identify even without specific characteristics and if that's the case, if they can identify a gun, then you can almost presume that it can be used as a bludgeon. Well I don't know that I would necessarily agree that the average layperson could distinguish a gun between a real gun or a plastic gun. But this particular victim testified there was a gun and inherently that a gun would be able to be used as a bludgeon. There wasn't any testimony to the opposite. Well of course Washington's not required to disprove that. But again, the victim testifying that he saw a gun only gets so far as he had a subjective belief that he had a gun. There needed to be a follow-up question. What makes you think it was a gun? Could you describe the object that you saw? And if he answered it just looks like a gun, would that be sufficient in your analysis? No, because I believe that would again only go to the subjective belief that it was a gun. Why did it look like a gun? Was it metallic? Did it look like it was heavy? The court, this court in Ross indicated that whether or not an object is a dangerous weapon is a question of fact for the trier of fact to decide. But that decision has to be based on some objective evidence as to the physical characteristics of the object rather than just the victim's subjective belief that it was capable of being used as a bludgeon. But even that evidence, doesn't it have to be held in the light most favorable to the prosecution? Whatever evidence it is? Well it has to be viewed in the light most favorable to the prosecution, but here there is no evidence to view in the light most favorable to the prosecution other than the victim's subjective belief. This court has repeatedly rejected that as a basis. There is no objective, there is no, the victim didn't testify as to the weight or the composition of the object that he saw that there is no testimony that we could defer to to the trier of fact in this case. Is the only evidence, you tell me, what evidence was presented about the gun? Nothing other than the victim said there was a gun. There is no other evidence in this case. He said he slid beside him and put a gun to his head. Pointed a gun to his head, but there is no evidence that the gun actually touched his head. But he saw something? He saw something he believed to be. That he described as a gun? He described as a gun, yes. When you say gun, doesn't that mean, doesn't that cover composition as well? It's metal? Well I don't think so. I think that only gets again to what the victim believed it was. But it could have been a hard plastic. There have been cases that indicate something that there needs to be something beyond that. A description of some sort. And in this case there just isn't any evidence. And because of that, this case is not about expanding the standard of review or second guessing the trier of facts credibility determinations. It's simply about the absence of sufficient evidence in this case. If someone testifies that a gun was pointed at them, what more could they say to satisfy the standard of the Jewish? Just something regarding the physical characteristics. Again, why did you think it was a gun? What did the gun look like? Did it have a pearl handle? I mean, what else would they say? That it looked like it was made of metal. They could have said it looked like it was made of wood. Because again, the state didn't have to prove that this was a real gun. Just that it was something that was capable of being used as a bludgeon. So some sort of additional evidence that could form the basis for the trier of facts to make a decision that it was capable of being used as a bludgeon. Was it necessary to have, earlier in our response to a question, I think from Justice Freeman, you said, he said putting the gun to his head and you said it didn't touch his head. Is that significant? Well, it would only be significant if he went further and said it felt hard or it felt cold or it felt like it was made of metal. But in this case, we can't even get to that step because the victim in this case didn't testify that he had any contact with the object at issue in this case. Would it be necessary, under your view, that the witness testified that he had some familiarity with guns, that he'd seen them before, therefore he knew that it was a gun? Is that necessary? I don't think it's necessary. I think if the victim did go, again, a step beyond simply saying it was just a gun, you know, if he said I'm an expert with guns, I knew the caliber or I knew the specific type of gun and it was that, then that might get closer to the being a question of fact, having some sort of objective evidence. But here, we don't really have that. I think that if there was something regarding the caliber of the gun or the metallic nature. So saying for a lay witness to testify, I saw a gun, lay people aren't capable of, it's not reasonable for lay people to conclude that it was a gun? I don't think so. There are a lot of toy plastic BB guns that could look real. What if it was a bow and arrow? Well, a bow and arrow would be something that would fall into a category of a weapon that would be dangerous per se. So does a gun? Well, if a gun was loaded and dangerous or if it was alleged that Washington was using a firearm in this case, that certainly would be a separate question. But the state in this case, the question is whether the object was capable of being used as a bludgeon. So a bow and arrow probably wouldn't be capable of being used as a bludgeon. But if there was evidence about the make up of that. If it was wood or metal or whatever? If it was made of a heavy wood, perhaps. Perhaps. Again, that would be a question of fact for the trier of fact to decide. As long as there was some evidence in the record as to the be preempted by the fact that a court would find that would be dangerous per se. Back to Justice Garmon's question. If this court takes the position that a lay person can give an opinion, just like they can give an opinion as to speed, for example, without being an expert, that they can give an opinion as to what is a gun or not a gun, especially when it's in close proximity to their head. Was there any contrary testimony? Was there anything on cross-examination of the victim? Are you sure it's a gun? Probably not because of the position that's before us, right? Correct. And I don't assume it was even, although not being evidence, I don't assume it was even argued by the defendant in closing argument that it wasn't a gun, right? Well, defense counsel didn't specifically argue that it wasn't a real gun, but did point to the jury of the fact that we don't know what this object was specifically. So why wouldn't that, too, then be a question? The only evidence they really heard was a lay person saying that it was a gun. If we believe a lay person could make that determination, that's the only evidence that they hear, right? I should clarify. I think if a lay person simply said, as the victim in this case said, it was a gun, that would go to just a subjective belief that it was a gun. And if this court were to find that, it would have to overrule Ross and Skelton saying that a subjective belief is in that. Now if that lay person took another step and added why in that person's opinion it was a gun, because it was made of metal, because it was a certain caliber, because it had a subjective evidence as to the physical characteristics of that object, that would form a basis for a trier of fact to come to that conclusion. But wouldn't the trier of fact then use the conduct of the victim as the next step? The conduct of the victim, he complied with, because of his fear, allegedly, complied with the offender to do what he said to do. So that would be the next step, that he believed it was a gun. Right. But again, belief is not enough. And in fact, that court, this court addressed that exact issue in Ross, because the victim in Ross testified that he was in fear for his life. And this court found that that was not enough to create a basis for finding that it was a dangerous weapon. That's what he said, but I'm talking about the conduct, and the victim complied and he acted accordingly. Right. But of course, the victim, if, would act accordingly, even if he was mistaken in his belief that there was an actual gun. That it was, you know, maybe it was a pellet gun of some sort. So the victims, the state argues that the victim would not have been compliant if it had not actually been a dangerous weapon. But of course, the legislature has already said that it was a dangerous weapon, but there was not, and that's aggravated robbery. Would a victim along with a witness be enough? If the witness described the weapon. But if the witness just said, oh, he had a gun, not a gun. I don't believe so. Because this case is not about requiring corroborating evidence as to the dangerous nature of the gun. It's just requiring some evidence as to the dangerous nature of the gun. Isn't Ross distinguishable? Because in that, from the get-go, he was charged with armed robbery, and in the testimony of trial, that he, they described it as a small BB gun. Isn't that way different than somebody saying somebody had a gun? No. Because again, we're talking about a bludgeon here. This is not about whether or not there was an operable gun that could have met the definition of a firearm. The only question here is whether it was capable of being used as a bludgeon. And so. But if you agree that if it was a gun, if we say a layperson can testify, a gun is a, I saw a gun, and it's a gun, that's sufficient to prove it could be used as a bludgeon, isn't it? No. Not unless there was some follow-up description of what it was. I don't agree that a layperson simply saying it was a gun is enough. There would have to be an explanation for that belief. I saw a gun, and it was, it had a metal, it had a pearl handle and so forth. That's enough then? Yes. I believe that if there was any evidence regarding the weight or the metallic nature, that it was a revolver or what have you, then that would be for the trier fact, to determine whether there was sufficient evidence there. But even in that situation, the pearl could be plastic, the metallic could be plastic. I mean, so what a victim sees is a gun. There's really no way of telling. Well, if the victim does say it was made of metal. But how would a victim know if he doesn't touch it? Well, I think that according to the case law in Skelton and Ross and in Thorne, the victim's testimony describing the physical nature of the weapon is enough for it to get to be a question of fact. Right. You know, and then those guns that could be metal, they could be plastic, it could be anything. It could be wood, like you say. And it looks like metal. But what victim is going to be touching a gun? It looked like it was capable of being used as a bludgeon. And perhaps that would be a question for this Court to address later. But can't the trier of fact on the testimony of the victim's, the victim's testimony was it was a gun. It looked like a gun. Could the trier of fact determine that that was sufficient? Well, not under the case law in the state of Illinois for two reasons. One, there's no mandatory presumption that a gun is a dangerous weapon. The state has not challenged that in this case at all. And again, two, the longstanding law is that simply believing that a gun is a gun is not enough. The trier of fact is allowed to make that decision, but has to be based on something other than simply what the victim believed. There has to be some description in that case. Was the victim questioned or cross-examined as to his ability to observe, to see what he saw? No, absolutely not. If he said, I saw a duck, would you accept that that was a duck? Or would he have to ask, did it walk like one, talk like one, et cetera, to establish that it was a duck? Probably if a duck was an essential element of the offense, I would say yes, that there would be something. You can't take the unrebutted testimony of a layperson that something is something without going into detail as to why he thought it was something. Exactly. Exactly right. What we have here is an opinion case, isn't it? Yes. Yes. From a layperson who, again, we don't have... People can render opinions on a varied topics, speed, many things. And the question is, can a layperson render an opinion on something being a gun? I don't even know if we have to get to that question in this case, to be totally honest, because the victim... For my purposes, let's just pretend. Sure. Well, I think that if the victim justified his opinion in some way, then there would be some evidence there for the trier effect to make a decision, which is the role... Down next to me with the gun, pointed at my head, I could see it, and it was two feet from me, one foot from me. I don't believe that that's sufficient. Just being able to see an object without saying, and it was a certain caliber, it was... It's only rendering an opinion that based upon what I saw, I believe this was a gun. I do not believe that that is sufficient under Ross. Ross specifically said that a subjective belief is not enough. And that's an important, again, just an important distinction to make, even though Ross, we knew, in fact, we knew a lot more about the dangerous weapon in Ross than we do in this case. We knew that it was small, that it was black, that it was a pellet gun. These are all facts going to the dangerous nature of the weapon, whether it could be a bludgeon. And this court found that it was insufficient. We don't even have anything like that. Well, it was a pellet gun, so we knew that it was lightweight. I don't know that we knew that it was lightweight, necessarily, in Ross, because a pellet gun, you know, in theory, could be heavy. But the important thing is Ross is not about whether or not a pellet gun can ever be a dangerous weapon. It was about whether there was sufficient evidence describing the pellet gun in that case, which is the same reasoning that the appellate court used in this case to determine there was insufficient evidence. Counsel, the officer, Corrine, if that's how it's pronounced, found him in the back of the truck. According to the briefs, it says he noticed the victim was highly agitated, sweating profusely and breathing heavily. Since this is a jury finding of fact, is that a fact? No, I don't believe so. Because the case law is very clear that you need something other than you need some sort of description of the weapon or the object at issue. You know, that may be sufficient to demonstrate aggravated robbery, but it doesn't get so far as armed robbery in this case. Ms. Weiler, I see your red light is on, but before you get away, just one quick question. Would you agree that the second issue in your cross appeal was recently resolved in Peeble v. Averitt? I don't think so in this particular case, although I do agree with the court that the appellate court could be remanded for a decision in that case. Okay, but you think your situation is distinguishable from Averitt? Yes, I do. Thank you. Defendant's argument is premised and relies on the cases Skelton, Thorne and Ross. The people maintained that those cases do not apply here. They are distinguishable. Because in those cases, additional evidence would have been required because the inference, the permissible inference of dangerousness was rebutted in those cases because the weapon used in those cases, Ross, Thorne and Skelton, affirmatively showed and proved that they were not capable of being dangerous weapons. They were pellet guns. They were BB guns. They were toy guns. The inference of Riesveld remains intact here, and the victim's testimony describing that the defendant held a gun to his head in this testimony, which was absolutely positive and certain and unrebutted, allows and remains intact the inference that the jury can make that the gun used by defendant held to the defendant's head the entire time until he was locked in the cargo area was a real gun. The people then established that it's capable of being used as a bludgeon because a real gun certainly is capable of being used as a bludgeon. The arguments in which... Can you tell us how to distinguish this language from Ross, Thorne? Back to the first question. The State may prove that a gun is a dangerous weapon by presenting evidence that the gun was loaded and operable or presenting evidence that it was used or capable of being used as a club or a bludgeon. Here the State didn't either. She said that that applies as much to this case as it did the Ross case. That's the proof required, just a proof case, and the State didn't do either in this case either. So how do we distinguish that? We distinguish it because certainly the people have to prove the elements of the offense beyond a reasonable doubt. The people did that in this case because the jury here was still permitted to make an inference of dangerous based on the credible testimony of the victim. In Ross, however, the inference of dangerousness that was made by the trial court in Ross was found to be unreasonable because the evidence affirmatively showed that it was not a dangerous weapon. And unless the people presented more evidence that this unloaded pellet gun was capable of being used as a dangerous weapon, then the people could not sustain their burden. But that is not the case here. Well, if a gun is unrecoverable, like in this case, there was no gun to prove that it was capable of being a weapon, other than the fact there was testimony by the victim that it was a gun, then never be able to prove the case if you needed more. That would be correct, Your Honor. The people could never sustain their burden. Of course, the people would love to recover the guns in every case. But as you know, defendants in many cases are successful in discarding the guns. But that does not mean that the people can't prove their burden of proof if a gun is not recovered or the gun is not described. Because at what point is a description enough? The victim's testimony, a gun was held to my head, why would it make it any more reliable if the victim said, oh, it was a silver gun? It's still a gun and it's an inference for the jury to have made. And the question remains, was it a reasonable inference? And in this case, it was. The arguments which a defendant made here today are very similar to the arguments which the jury heard the arguments that the gun was not recovered, the people didn't establish their burden of proof, the gun was not described. The jury heard these arguments but still believed the victim and determined that the gun that was used by the defendant was a real gun and a dangerous weapon. This was a proper finding for the jury to have made. The appellate court, however, in reversing the defendant's conviction has completely usurped the jury's role and has ignored the standard of review here by mischaracterizing and misapplying and overextending this Court's decision in Ross. The people would ask, does this Court reverse the defendant's affirm defendant's conviction and reverse the appellate court's decision because otherwise there could be long range and reaching effects because if the appellate court's analysis is allowed to stand and Ross is extended to cases such as this, which is not uncommon, where a gun is not recovered or a victim does not describe the weapon in detail but the evidence is positive and unrebutted, unequivocal that a gun was used in this case and the jury then is allowed to infer that that gun is real, therefore capable of being used as a result of the appellate court's conviction could undo and rewrite decades of jurisprudence in this area. Thank you, Your Honors.